IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| **CHARLOTTE SAMUELL** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| **TOYOTA MOTOR CORP., TOYOTA** | § | |
| **MOTOR SALES, U.S.A., INC., AND** | § | CIVIL ACTION NO. 7:13-cv-00047 |
| **TOYOTA MOTOR ENGINEERING &** | § | |
| **MANUFACTURING NORTH** | § | JURY |
| **AMERICA, INC.** | § | |
| | § | |
| Defendants. | § | |

## TOYOTA'S SUPPLEMENT TO ITS MOTION FOR SUMMARY JUDGMENT

For over seven months, Plaintiff's message to Toyota and this Court was clear—*I need the deposition testimony of Toyota's corporate representative on the design and testing of the 2011 Toyota Camry before I can respond to Toyota's Motion for Summary Judgment*. The Court and Toyota gave Plaintiff exactly what she requested, a date certain for the deposition of a corporate representative. But, seven days before the scheduled deposition of Toyota Motor Corporation's corporate representative, Plaintiff unilaterally cancelled the deposition. No additional request was made, and the discovery deadline has now passed. The parties are now in the same position as when they appeared before the Court for the original hearing on Toyota's Motion for Summary Judgment. Plaintiff has failed to comply with the federal rules, Fifth Circuit and Texas case law, and this Court's directive regarding her expert disclosures and response to Toyota's Motion for Summary Judgment. In addition, Plaintiff still does not have the required expert testimony to support her product liability claims because the opinion testimony

_____
TOYOTA'S SUPPLEMENT TO ITS MOTION FOR SUMMARY JUDGMENT                    PAGE 1

of the one expert witness she did manage to designate is unreliable and should be excluded. Therefore, Toyota is entitled to summary judgment and dismissal of all Plaintiff's claims against Toyota.

## I.
### BACKGROUND

On June 19, 2014, Toyota filed its Motion for Summary Judgment ("MSJ") on all Plaintiff's claims because she failed to bring forth any evidence, expert or otherwise, to support her product liability claims as required by Texas law. *See* Doc. No. 17. Almost one month after Toyota filed its MSJ, Plaintiff served Stephen Syson's Original Report ("Original Report). *See* Syson July 14, 2014 Original Report, Ex. A. On September 3, 2014, the Court held a hearing regarding Toyota's MSJ. Plaintiff represented to the Court through various prior pleadings and oral argument at the hearing that she needed Toyota's corporate representative testimony in order to respond to Toyota's MSJ.[1]

Toyota's MSJ was originally granted, but subsequently deferred, with a narrowly-tailored Amended Scheduling Order entered by the Court. Doc. No. 34. The parties then conferred regarding the requested Toyota Motor Corporation ("TMC") deposition. TMC agreed to produce its corporate representative for deposition on November 20, 2014 in Torrance, California. Shortly thereafter, on October 24, 2014, TMC served Plaintiff with its Responses to Plaintiff's Original Deposition Notice in which TMC agreed to present its corporate representative to testify on various topics requested by Plaintiff, including the design and testing of the front structure of the 2007-2011 U.S. bound Camry. *See* TMC's Response to Plaintiff's Original Notice, Ex. C at 5-6.

---

[1] *See* Plaintiff's Motion for Extension of Time to Respond to Toyota's MSJ, Doc. No. 19 at 3; Plaintiff's Motion for Continuance and Amended Scheduling Order, Doc. No. 26 at 4; Transcript of September 3, 2014 hearing, Ex. B at 9-13.

---

On Monday, November 10, 2014, less than 10 days before the scheduled deposition of TMC's corporate representative, Plaintiff's counsel emailed TMC's counsel an Amended 30(b)(6) Deposition Notice that included new deposition topics that were never previously disclosed in any of Plaintiff's pleadings or Syson's Original Report, including references to knee airbags and submarining.  *See* Amended Notice, Ex. D.  After discussions among the parties, Plaintiff's counsel notified Toyota's counsel that "Plaintiff has decided <u>not</u> to take the oral deposition of the TMC representative next Thursday, November 20, 2014 in Torrance, California."  *See* Email from Gary Fuller to Fred Huntsman (Nov. 14, 2014) Ex. E (emphasis in original).

After unilaterally cancelling the TMC corporate representative deposition, Plaintiff served Toyota with Steve Syson's Supplemental Report ("Supplemental Report") on November 25, 2014, raising new, untimely theories.  Ex. F.  Shortly thereafter, Toyota filed a supplement to its Motion to Strike Plaintiff's Expert Witnesses.  Doc. No. 56.  On December 17, 2014, the Court granted in part and denied in part Toyota's Motion to Strike Plaintiff's Expert Witnesses, limiting Syson's trial testimony to the allegations set forth in Plaintiff's Original Complaint. Doc. No. 57 at 5.

## II.
### ARGUMENTS AND AUTHORITIES

A.  **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 "mandates the entry of summary

___

judgment, after adequate time for discovery[2] and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." C*elotex Corp. v. Cattret*, 477 U.S. 317, 322 (1986); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990).  The nonmoving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324.  When federal jurisdiction is based on diversity of citizenship, as in this case, a federal court applies the substantive law of the forum state in which it is sitting; therefore, Texas substantive law applies to this action.  *See, e.g.*, *Foradori v. Harris*, 523 F.3d 477, 486 (5th Cir. 2008) (*citing Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).

> **B.     Plaintiff's Product Liability Claims Should Be Dismissed.**
>
> > *1.  Plaintiff's prior representations regarding the necessity of TMC's corporate representative testimony were not true, and therefore nothing has changed since the Court originally granted Toyota's MSJ.*

Since the filing of Toyota's MSJ on June 19, 2014, Plaintiff has made clear that she required the deposition testimony of TMC's corporate representative before being able to appropriately respond to Toyota's MSJ.  These representations were made throughout various pleadings and at the original hearing on Toyota's MSJ.  Plaintiff first made this representation on July 1, 2014 in her Motion for an Extension of Time to Respond to Toyota's MSJ.  In that motion, she states, "Plaintiff requires the deposition of the Toyota Defendants' representatives that are knowledgeable about the design and testing of the Toyota 2011 at issue" before being able to respond to Toyota's MSJ.  *See* Doc. No. 19 at 3.  She went on to explain that "this discovery almost certainly will reveal fact issues applicable to Plaintiff's response."  *Id.*  Plaintiff

---

[2] Plaintiff filed her Original Complaint on May 23, 2013.  The original discovery deadline was July 7, 2014.  On September 19, 2014, the Court extended the discovery deadline to January 5, 2015.  Therefore, an adequate amount of time has been had for discovery in this case.

_____

also claimed that her expert witnesses "would benefit from an explanation by the representatives of the Toyota Defendants' representatives as to the design and testing of the vehicle." *Id.* at 4.

Plaintiff next represented to the Court her need for Toyota's corporate representative testimony in her Motion for Continuance and Amended Scheduling Order that was filed on August 26, 2014. In this motion, Plaintiff reiterated that she needed the Rule 30(b)(6) deposition before being able to respond to Toyota's MSJ. Doc. No. 26 at 2, 4. Finally, and most importantly, Plaintiff represented to the Court at the MSJ hearing that she needed the testimony of TMC's corporate representative before being able to respond to Toyota's MSJ. Specifically, Plaintiff's counsel represented the following to the Court:

> In addition, we have not yet had -- and that was the basis of our motion for extension of time to respond to this particular pleading, is that even the expert report that we do have from **our expert does not have the benefit of the 30(b)(6) representative witness depositions.** And those depositions would provide information about what, how, and when Toyota knew about the design defect, the decisions that the Toyota Defendants made regarding the safety elements of this particular 2011 Camry. And so **that's the additional information that I would provide in response to this motion for summary judgment.** So, it would be twofold. The first would be that our expert would be able to have the benefit of that inside information. The other thing would be, is that those depositions in and of themselves would provide information about each and every one of these causes of actions, about the design, about the warranty, about the misrepresentations, about the negligence, because through questioning of these particular individuals -- and we had listed 23 different topics for each one of these corporate representatives -- we would be able to ask them these questions and, I believe, receive admissions from them about the defect, the manufacturing, the design, the warranties, each and every one of the causes of action that we pled. So, consequently, not having that information in hand, I have filed first a motion for extension of time. And then just this week because, you know, we are still facing these issues and still didn't have the depositions that you ordered to be provided, I reasserted and added additional information in a motion for extension of time. **With regard to the response that we would file if we had the information that we have requested, it would come in the form of not only**

___

> **documents that would be provided through the 30(b)(6) depositions, with those people's testimony, and then our own experts' ability to testify about what the Toyota witnesses testified about and the documents that they provide.**

Ex. B at 9:8—10:20 (emphasis added). Plaintiff's counsel went on to state that she "needs additional information to provide an adequate response" and that this deposition will be the first time Plaintiff can "speak with the Toyota people themselves." *Id.* at 12:24—13:2. Plaintiff promised the Court a new MSJ response that would contain information from Toyota's corporate representative, but after refusing to take that deposition, Plaintiff cannot deliver on that promise. It is now clear that Plaintiff's counsel's representation to the Court was a disingenuous ploy to avoid Plaintiff's claims being dismissed for failure to follow the federal rules, Fifth Circuit and Texas case law, and this Court's orders.

Plaintiff's manipulation continued even after the hearing. After the Court orally granted Toyota's MSJ, Plaintiff filed a Motion for Leave to File a Response to Toyota's MSJ on September 11, 2014. In that motion, Plaintiff listed two very specific reasons why she failed to file a response to Toyota's MSJ despite the Court's specific order directing her to do so by August 6, 2014. Doc. No. 31. The first reason was that "her expert had not had the opportunity to take into consideration information that Plaintiff would have received through the depositions of Toyota's corporate representatives." *Id.* at 8. Second, "Plaintiff had not yet had the opportunity to take the depositions of Defendants' expert witnesses." *Id.* at 9.

After the Court deferred ruling on Toyota's MSJ, the parties conferred regarding the scheduling of the TMC corporate representative deposition and agreed on November 20, 2014. Less than 10 days before the scheduled deposition of TMC's corporate representative, Plaintiff's counsel emailed TMC's counsel an Amended 30(b)(6) Deposition Notice that included new deposition topics that were never previously disclosed in any of Plaintiff's pleadings or Syson's

---

Original Report, including references to knee airbags and submarining. *See* Amended Notice, Ex. D. Seven days before the scheduled deposition, Plaintiff's counsel, despite months of representations to the Court and Toyota that they "needed" this testimony, unilaterally decided that Plaintiff was not going to take the deposition of TMC's corporate representative. *See* Ex. E. Toyota tried to give Plaintiff what she had been requesting for months; but then, at the last minute, Plaintiff decided that she did not need this deposition to proceed with her claims against Toyota.

The parties had also agreed upon dates for Plaintiff to take the depositions of Toyota's expert witnesses. In fact, Plaintiff had served deposition notices for all of Toyota's expert witnesses. Ex. G. Then, after cancelling the TMC deposition, Plaintiff decided not to take the depositions of Toyota's expert witnesses, thus failing to conduct the other discovery that she supposedly "needed" to respond to Toyota's MSJ. *See* Email from Gary Fuller to Kurt C. Kern (December 22, 2014) Ex. H.

Plaintiff's actions in the discovery process lead to a simple conclusion—Plaintiff never needed Toyota's corporate representative's testimony or Toyota's experts' testimony to respond to Toyota's MSJ. Instead, Plaintiff used her supposed "need" for this testimony to distract this Court from her blatant failure to follow the basic rules of procedure and this Court's orders. Plaintiff's constant pleas for Toyota's corporate representative testimony and Toyota's experts' testimony was a ruse to avoid dismissal of Plaintiff's claims in their entirety for failing to comply with the federal rules, Fifth Circuit and Texas case law, and the Court's Orders. Nothing has changed since the September 3, 2014 hearing. Plaintiff's misrepresentations should not go unnoticed, and her product liability claims should all be dismissed.

> 2. *Plaintiff cannot rely on Syson's Supplemental Report to support her product liability claims.*

Plaintiff has suggested that Plaintiff's knee airbag and submarining claims are set forth in Plaintiff's Original Complaint and therefore were not excluded by the Court's Order denying in part and granting in part Toyota's Motion to Strike Plaintiff's Expert Witnesses. In the "Overview" section of her Original Complaint, Plaintiff generally states that Toyota failed to remedy the "defective design of the front passenger side of the 2011 Toyota Camry." *See* Doc. No. 1 at 2. Plaintiff argues this language encompasses all of the defect allegations set forth in Syson's Original and Supplemental Reports. Doc. No. 66-1 at 2. Plaintiff's argument fails for at least three reasons.

First, if Plaintiff's interpretation of the Court's December 17, 2014 Order is correct, this would render the Court's Order meaningless. The Court's Order denied in part and granted in part Toyota's Motion to Strike Plaintiff's Expert Witnesses. Doc. No. 57. If Plaintiff is permitted to rely on Syson's untimely Supplemental Report and testify on these newly disclosed defect allegations (knee airbags and submarining), the Court's Order would effectively result in the Court denying Toyota's Motion in its entirety. That is not what the Court did. Instead, the Court limited Syson's testimony to the "allegations as set forth in the Original Complaint." *Id.* at 5. As discussed below, these new allegations regarding submarining and knee airbags were not identified in the Original Complaint and were not disclosed until Syson's Supplemental Report. Therefore, if the Court does not grant Toyota's MSJ on all of Plaintiff's claims, Toyota requests that the Court grant Toyota's MSJ (and Supplement) and dismiss all of Plaintiff's claims related to the new defect allegations set forth in Syson's Supplemental Report, specifically including defect theories relating to knee airbags or submarining.

Second, there is an unequivocal distinction between the defects set forth in Syson's Original Report and the defects set forth in his Supplemental Report. Any assertion by Plaintiff that Syson's Supplemental Report is an extension of Plaintiff's Original Complaint and Syson's Original Report is simply not true. Syson's Original Report was served in July 2014. In the report, Syson identified specific defects in the Camry that relate to the "bumper reinforcement," "A pillar padding," "side airbag," and "load limiter" (a seat belt component). *See* Ex. A at 9-10. These were the only specific defect allegations identified in Syson's Original Report. As discussed at length in Toyota's MSJ and Toyota's Motion to Strike Plaintiff's Expert Witnesses, Plaintiff was required to serve an expert report with her expert disclosures that included "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. Pro. 26(a)(2)(B)(i); *see also* Doc. Nos. 17, 37, 41, 56.

Syson's Supplemental Report contained new defect allegations that were never previously disclosed. Specifically, Syson now alleges that the Camry was not equipped with knee airbags or anti-submarining features. Ex. F at 5-9. The word "submarining" (or any iteration of it) was used twenty-two (22) times in Syson's Supplemental Report. The word "knee airbag" was used seven (7) times. The word "submarining" (or any iteration of it) or "knee airbag" was used zero (0) times in Plaintiff's Original Complaint and Syson's Original Report. Doc. No. 1, Ex. A. Syson has been studying vehicles for over 50 years. *See* Syon's CV, Ex. I. He has been testifying in automotive product liability cases for numerous years. There is no doubt that he knows the terms "submarining" and "knee airbags" and knows how they are commonly used in product liability cases. If Syson thought there were issues raised in Plaintiff's Original Complaint, then he would have discussed them in his Original Report. Instead during his deposition, Syson claims that vague references to "not restraining the pelvis is generally, by

---
**TOYOTA'S SUPPLEMENT TO ITS MOTION FOR SUMMARY JUDGMENT**                                         **PAGE 9**

definition, submarining." Excerpts from Syson's Deposition, Ex. J at 80. However, Syson admitted that he never used the term "pelvic displacement" anywhere in his original report. *Id.* Instead, Syson claims his Original Report says that the "safety belt fails to appropriately restrain both her pelvis and torso." *Id.* at 81. Syson then admits that the only injury that he in any way suggests is directly related to the alleged defects in his Original Report is an injury to Plaintiff's head. *Id.* at 81-82. For the reasons stated above, there is no doubt that Syson knows the term submarining and if he intended to use it in his Original Report, he would have done so. Syson's mischaracterization is inappropriate and should be disregarded.

Third, when reviewing Plaintiff's Original Complaint as a whole, it is clear that Plaintiff's allegations focus only on the NHTSA testing that was conducted on the 2011 Camry. *See*, i.e., Doc. No. 1 at 5. Although Plaintiff's Original Complaint was prepared at the outset of the pleadings stage, it is inconceivable to suggest that in this context the "front passenger side" of the 2011 Camry encompasses the new and specific defect allegations set forth in Syson's Supplemental Report. At the very least, Plaintiff was required to specifically identify what she alleged was wrong with the Camry and no where in her Original Complaint did she claim the Camry was defectively designed with regard to the lack of knee airbags or some submarining phenomenon.

> *3. Plaintiff has no reliable expert testimony to support her product liability claims as required by Texas law.*

Even if the Court denies Toyota's MSJ based on the foregoing, Plaintiff still does not have the required expert testimony to support her design defect claims. As discussed in Toyota's MSJ, expert testimony is required to prove the existence of a design defect. Here, Plaintiff untimely designated Syson to offer opinions regarding the design of the subject 2011 Camry.

___

However, Syson's testimony is not sufficient to support her design defect claims for three reasons.

First, Syson does not have the necessary understanding of the subject accident to conduct a reliable comparison between various crash tests and the subject accident. Second, Plaintiff has no evidence, expert or otherwise, to support her opinions that the alleged defects in the Camry were a producing cause of her alleged head injury, a required element under Texas law. Finally, Syson has done no testing or analysis of his proposed alternative designs to show that under the circumstances of the accident they would have changed the outcome for Plaintiff, another required element under Texas Civil Practices Remedies Code § 82.005 to prove a defect. Because Plaintiff has failed to present the requisite expert testimony to support her design defect claims, they should be dismissed.[3]

### C. Plaintiff's Remaining Claims Should All Be Dismissed.

Even if the Court denies Toyota's MSJ regarding Plaintiff's design defect claims, Plaintiff has still not brought forth any evidence to support her manufacturing defect claim, marketing defect claim, negligence claim, breach of warranty claims, or misrepresentation claim. For the reasons previously set forth in Toyota's MSJ, these claims should be dismissed in their entirety.

### D. Plaintiff Does Not Have a Wrongful Death Claim Based on the Death of Durward Wright.

Under Texas law, Plaintiff does not have a wrongful death claim due to the death of her "companion," Durward Wright. A wrongful death cause of action is for the exclusive benefit of the surviving spouse, children or parents of the deceased. Tex. Civ. Prac. & Rem. Code §

---

[3] For a further discussion of these issues, Toyota incorporates by reference its Motion to Exclude Stephen Syson's Testimony (Doc. No. 61) and Toyota's Reply in Support of Motion to Exclude Stephen Syson's Testimony (Doc. No. 65).

---

71.004. Accordingly, to bring a wrongful death cause of action, "a party is required to prove that he or she was the deceased's spouse, child or parent." *Sheperd v. Ledford*, 962 S.W.2d 28, 31 (Tex. 1998).

In her Original Complaint, Plaintiff alleges that "she continues to mourn the loss of her longtime companion, Mr. Wright, who died in the collision scene. Further, Plaintiff was removed from the home she had made with Mr. Wright." Doc. No. 1 at 7. While in the Court's chambers at the September 3, 2014 hearing, Plaintiff's counsel suggested that Plaintiff was seeking mental anguish damages for the loss of Mr. Wright in this accident. Plaintiff does not have a wrongful death claim or a claim for mental anguish damages for the loss of Mr. Wright because they were not legally married at the time of the accident and did not establish a common law marriage.

In order to have a common law marriage under Texas law, the parties must 1) agree to be husband and wife; 2) live together as husband and wife; and 3) hold each other to the public as such. *Collora v. Navaroo*, 574 S.W.2d 65, 68 (Tex. 1978). During her deposition, Plaintiff admitted that she and Mr. Wright were not married. Excerpts from Charlotte Samuell Deposition, Ex. K at 19:10—20:14. Plaintiff also acknowledged that they did not have an agreement to be married and that she never told anyone that Mr. Wright was her husband. *Id.* Valverie Hicks, the driver of the Camry at the time of the accident and a friend of Plaintiff, also stated during her deposition that Plaintiff and Mr. Wright did not hold themselves out as a married couple and had no intention to get married. Excerpts from Valverie Hicks Deposition, Ex. L at 53. It is also telling that in her Original Complaint, Plaintiff refers to Mr. Wright as her "companion" rather than her "husband" or "spouse." Plaintiff and Mr. Wright did not have a legal or common law marriage. Therefore, Plaintiff does not have a wrongful death claim for his death and cannot

_____

bring forth any evidence of mental anguish in support of her products liability claims against Toyota.[4]

### E. Plaintiff's Gross Negligence and Exemplary Damage Claims Should Be Dismissed.

Plaintiff's most recent disclosures state that she is seeking $18 million in punitive damages against Toyota. Plf's Second Amended Initial Disclosures, Ex. M at 12. Exemplary damages are authorized under the Texas Civil Practice & Remedies Code when the claimant proves by clear and convincing evidence that the harm results from fraud, malice, or gross negligence. Tex. Civ. Prac. & Rem. Code § 41.003(a); *Dillard Department Stores v. Silva*, 148 S.W.3d 370, 372-73 (Tex. 2004). Plaintiff alleges gross negligence to support her claim for exemplary damages.[5] Plaintiff cannot make a showing sufficient to establish essential elements of her gross negligence claim. In order to constitute gross negligence, an act must, when viewed objectively from the standpoint of the actor at the time of its occurrence, involve an extreme degree of risk, considering the probability and magnitude of harm to others. Tex. Civ. Prac. & Rem. Code § 41.001(11); *Columbia Med. Ctr. Las Colinas v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2012); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). "Extreme risk" is not "a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to Plaintiff." *Columbia Med.*, 271 S.W.3d at 248; *Mobil Oil*, 968 S.W.2d at 921. Plaintiff cannot make a sufficient showing that the Camry posed such an extreme risk to present a genuine issue for trial. Gross negligence also requires that at the time of the occurrence, the defendant have actual subjective awareness of the risks involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others. Tex. Civ. Prac. & Rem. Code §

---

[4] Plaintiff also has not plead and has no evidence from Syson or any other source that any alleged defect in the Camry caused Mr. Wright's death.
[5] Plaintiff also claims that Toyota committed fraud and misrepresentations. For the reasons set forth in Section E of Toyota's MSJ (Doc. No. 17 at 11) and Section C above, these claims should be dismissed in their entirety.

---

**TOYOTA'S SUPPLEMENT TO ITS MOTION FOR SUMMARY JUDGMENT**　　　　　　　　　　**PAGE 13**

41.001(11); *Columbia Med.*, 271 S.W.3d at 248; *Mobil Oil*, 968 S.W.2d at 921. Plaintiff cannot make a showing sufficient to establish that Toyota had any actual subjective awareness of the alleged extreme risks, but nevertheless proceeded with conscious indifference to them. Because Plaintiff has no evidence of either essential element of her gross negligence claim, summary judgment should be granted and her request for exemplary damages should be dismissed.

### III.
### CONCLUSION

Summary judgment should be granted on all of Plaintiff's claims against Toyota. Plaintiff's repeated representations to the Court about the need for Toyota's corporate witness testimony in order to respond to Toyota's MSJ were completely false. Further, Plaintiff still has not met her burden to bring forth reliable expert testimony to support the necessary elements of her product liability claims. Even if the Court denies Toyota's MSJ with respect to Plaintiff's design defect claims, Plaintiff's manufacturing claim, marketing claim, negligence claim, gross negligence claim, breach of implied warranty claims, and misrepresentation claim should all be dismissed in their entirety. If the entire case is not dismissed, the Court should also dismiss Plaintiff's claims for wrongful death damages and exemplary damages.

WHEREFORE, PREMISES CONSIDERED, Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. respectfully request that the Court grant Toyota's Motion for Summary Judgment, dismiss Plaintiff's claims in their entirety, and for such other and further relief to which they may show themselves to be entitled.

Respectfully submitted,

*/S/ KURT C. KERN*
**KURT C. KERN**
State Bar No. 11334600
**FRED C. HUNTSMAN**
State Bar No. 24041155
**BRIAN E. MASON**
State Bar No. 24079906

**BOWMAN AND BROOKE, LLP**
2501 N. Harwood Street, Suite 1700
Dallas, TX 75201
Telephone (972) 616-1700
Telecopier (972) 616-1701

**ATTORNEYS FOR TOYOTA MOTOR CORPORATION AND TOYOTA MOTOR SALES, U.S.A., INC.**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 9th day of February, 2015.

*/S/ KURT C. KERN*

___