IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| CHARLOTTE SAMUELL, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | MO-13-CV-47 |
| | § | |
| TOYOTA MOTOR CORP., TOYOTA | § | |
| MOTOR SALES, U.S.A., INC., AND | § | |
| TOYOTA MOTOR ENGINEERING & | § | |
| MANUFACTURING NORTH | § | |
| AMERICA, INC., | § | |
| Defendants. | § | |

## MEMORANDUM ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court are Defendants' Motion for Summary Judgment (Doc. 17), Plaintiff's Response and Supplement to Response (Doc. 35; Doc. 36), Defendant's Supplement to Motion for Summary Judgment (Doc. 70), Plaintiff's Response (Doc. 73), and Defendant's Reply (Doc. 78).

On February 25, 2015, the Court held a *Daubert* hearing to determine whether Plaintiff's sole expert witness was qualified to testify at trial. At the end of the hearing, the Court excluded all testimony from Plaintiff's sole expert, Stephen Syson, issuing a memorandum order two days later on February 27, 2015. (Doc. 77). On March 31, 2015, this Court issued an order granting Defendants' Motion for Summary Judgment. (Doc. 73). The Court's memorandum order now issues to explain its reasoning.

### Background

This is a products liability case arising out of a car accident. On May 25, 2011, Plaintiff and three other individuals were traveling in a 2011 Toyota Camry eastbound on highway 176

1

when the Camry was struck by another vehicle. The two passengers in the backseat of the Camry died on the scene. Plaintiff (sitting in the front passenger seat) and the driver of the Camry were taken to the hospital. Plaintiff was placed in the Intensive Care Unit with several injuries, including a fractured upper and lower tibia.

On May 23, 2013, Plaintiff filed suit against Defendants alleging the following: (1) products liability; (2) negligence; (3) breach of implied warranties; and (4) fraud/misrepresentation/omission. Thereafter, the Court entered its scheduling order in this case. (Doc. 8). The Court set Plaintiff's deadline for designating her experts and filing her experts' reports for April 28, 2014. (*Id.*). On April 25, 2014, Plaintiff filed an unopposed motion to extend her expert designation deadline as well as the discovery deadline. (Doc. 12). The Court granted the motion and extended Plaintiff's expert designation and report deadline to May 28, 2014, and the discovery deadline to August 6, 2014. (Doc. 13). On May 28, 2014, Plaintiff filed an opposed motion to extend her expert and discovery deadlines. (Doc. 14). The Court granted in part Plaintiff's motion extending only the expert designation and report deadline to June 18, 2014. (Doc. 16). The Court informed Plaintiff there would be no further extension of the expert deadline. (*Id.*). On June 18, 2014, Plaintiff designated three experts. However, Plaintiff did not send the experts' reports with those designations as required under the Scheduling Order and Federal Rule of Civil Procedure 26(a)(2)(D). Thereafter, Defendants filed the motion currently before the Court on June 19, 2014, arguing summary judgment should be granted because Plaintiff failed to provide any expert testimony in support of her claims. Plaintiff then sought and was granted an extension of deadline to respond to the summary judgment motion until August 6, 2014. (Doc. 19; Doc. 22). Plaintiff failed to file her response by August 6, 2014. On August 20, 2014, the Court set a hearing on all pending motions in this case to be held on

2

September 3, 2014. (Doc. 24). On August 26, 2014, Plaintiff, yet to file a response to the summary judgment motion, filed an untimely and opposed motion to extend her summary judgment response deadline, expert designation and report deadline, and discovery deadline. (Doc. 26). On September 3, 2014, at the time of the hearing on all pending motions, Plaintiff had not filed a response to the summary judgment motion. At the hearing, the Court granted summary judgment in favor of Defendants. However, the Court later vacated its oral order granting summary judgment on September 19, 2014, after receiving and granting Plaintiff's Motion for Leave to File Response to the Defendants' summary judgment motion, which was filed September 11, 2014. (Doc. 34). Plaintiff filed her Response and Supplement to the summary judgment motion on September 19, 2014. (Doc. 35; Doc. 36).

On February 9, 2015, Defendants filed a supplement to their motion for summary judgment, contending Plaintiff failed to produce legally sufficient evidence in support of her claims to proceed to trial because Texas law required expert testimony to prove up her claims. (Doc. 70). Plaintiff responded on February 24, 2015, contending expert testimony was not necessary in this case and that her lay witnesses could still prove the existence of a defect through their testimony. (Doc. 73).

On January 8, 2015, Defendants filed a motion to exclude Plaintiff's sole expert witness, Stephen Syson. (Doc. 61). On February 25, 2015, the Court held a *Daubert* hearing to determine whether Plaintiff's sole expert witness was qualified to testify at trial. At the end of the hearing, the Court excluded all testimony from Plaintiff's sole expert, Stephen Syson, issuing a memorandum order two days later on February 27, 2015. (Doc. 77).

Defendants filed their Reply to Plaintiff's responses concerning the summary judgment motion on March 3, 2015, re-urging summary judgment for the reasons argued previously and objecting to several exhibits in Plaintiff's Response. (Doc. 78).

### Defendant's Objections to Plaintiff's Exhibits

Pursuant to Federal Rule of Civil Procedure 56(c)(2), Defendants object to Plaintiff's Exhibits 1–4, all of which relate to Stephen Syson, contending the exhibits contain hearsay testimony from Mr. Syson (Doc. 78 at 5) whom the Court previously excluded as an expert witness in this case. (Doc. 77). Defendants further object to Plaintiff's Exhibits 7–11, which are deposition excerpts of Plaintiff Charlotte Samuell, Valerie Hicks (the driver), Timothy Davis (the state trooper who investigated the crash and wrote the report), Stephen Blanco (state trooper who assisted with the investigation), and Dr. William Montgomery (an orthopedic surgeon). Defendants complain Plaintiff makes only blanket references to these deposition excerpts as "evidence of causation" without any explanation. Defendants further object to Plaintiff's Exhibits 7–11 as expert testimony from unqualified witnesses.

As the Court has already excluded all expert testimony from Mr. Syson (Doc. 77), the Court grants the Defendants' objections to Plaintiff's Exhibits 1–4.

With regard to Exhibits 7–11, the Court grants these objections in part. Having reviewed the record and Plaintiff's Response (Doc. 73), the Court can find no discussion or explanation concerning these exhibits other than the following general statements: "Even without Mr. Syson's testimony, the testimony from Plaintiff, Valerie Hicks (the driver of the vehicle), and other eyewitnesses constitutes evidence of causation. … Their testimony alone raises a question of material fact as to whether Toyota's actions caused the accident and Plaintiff's injuries." (Doc. 73). Because the Court finds that expert testimony is necessary in this particular case,

*supra* 7–8, 11, 13, 14; *see* Fed. R. Evid. 701, the Court concludes these depositions cannot be considered as expert evidence of causation by laypersons. The Court will consider these exhibits for purposes other than proof of causation, which requires expert testimony here.

The only remaining Plaintiff Exhibits are Exhibit 5, "[Defendants'] Response to Plaintiff's Notice of FCRP 30(b)(6) Notice of Deposition of Corporate Representative of Toyota Motor Corporation," and Exhibit 6, "[Defendants'] Response to Plaintiff Charlotte Samuell's Request for Production of Documents," to which no objections were filed. However, the Court notes that neither of these exhibits address any of the merits of this case. Plaintiff refers to Exhibits 5 and 6 only in a subsection F of her Response, which criticized Defendants for their purportedly unprofessional behavior and explained the evolving nature of her case strategy. (Doc. 73 at 19).

## Standard of Review

Summary judgment should be granted only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir. 1996).

If the movant carries this burden, the burden shifts to the nonmovant to show the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The nonmoving party may not rest upon the allegations or denials contained in her pleading, but instead she must demonstrate specific facts creating the existence of a genuine issue that needs to be decided by a factfinder. Fed. R. Civ. P. 56(c); *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Conclusional allegations, speculation, improbable inferences, or a mere scintilla of evidence are insufficient to defeat a summary judgment motion. *See Michaels v. Avitech, Inc.*, 202 F.3d 746, 754–55 (5th Cir. 2000) (citing *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993)).

Any inferences drawn from the underlying facts in dispute must be viewed in the light most favorable to the nonmoving party. *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing *Anderson*, 477 U.S. at 255). If the record, viewed in this manner, could not lead a rational trier of fact to find for the nonmovant, then summary judgment is proper. *Id.* (citing *Matsushita*, 475 U.S. at 578). If, on the other hand, the factfinder could reasonably find in the nonmovant's favor, then summary judgment should be denied. *Id.* (citing *Anderson*, 477 U.S. at 250). Finally, even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that it would be prudent to proceed to trial. *Anderson*, 477 U.S. at 255.

**Discussion**

Plaintiff's complaint raises the following four claims:

(1) products liability;

(2) negligence;

(3) breach of implied warranties; and

(4) fraud/misrepresentation/omission.

(Doc. 1 at 8–12). Plaintiff bases her claims upon the 2011 National Highway Traffic Safety Administration ("NHTSA") report regarding crash test results of the 2011 Toyota Camry, the now excluded testimony of Stephen Syson, and excerpts of lay testimony of several individuals. Defendants filed their motion arguing summary judgment should be granted because Plaintiff has

6

failed to produce sufficient evidence, expert or otherwise, to support each of her claims as required by Texas law.

### I.     Strict Products Liability Claims

Plaintiff first claims Defendants are engaged in the business of designing, manufacturing, assembling, promoting, advertising, distributing and selling the Toyota Camry in the United States, including the one in which Plaintiff was a passenger. (Doc. 1 at 8–9). Plaintiff alleges the defects in the 2011 Camry could not have been anticipated by a reasonable person and therefore presented an unreasonably dangerous situation for expected users, including passengers such as Plaintiff, even when used in a reasonable and foreseeable manner. (*Id.*).

Texas adopted section 402A of the Restatement (Second) of Torts providing for strict liability for the sale of dangerously defective products. *See McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 788–90 (Tex. 1967). A manufacturer who places into the stream of commerce a dangerous product because of some defect is strictly liable in tort to one who sustains injury because of the defect. *Darryl v. Ford Motor Co.*, 440 S.W.2d 630, 633 (Tex. 1969). Consequently, "[t]he concept of defect is considered central to any products liability action, whether the alleged defect occurs in the design, manufacturing, and/or marketing of the product." *Rodriguez v. Hyundai Motor Co.*, 944 S.W.2d 757, 769 (Tex. App.—Corpus Christi 1997), *rev'd on other grounds*, *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661 (Tex. 1999) (slip copy); *see also Patterson v. Rohm Gesellschaft*, 608 F. Supp. 1206, 1211 (N.D. Tex. 1985) ("There can be no valid products liability claim without a product which has a defect.").

There are three types of defect claims: design defects, manufacturing defects,[1] and marketing defects. All three claims require objective proof the defect existed and caused the injury sustained. Generally, the requirements to prove a defect necessitate competent expert testimony and objective proof that a defect caused the injury. *See Nissan Motor Co., Ltd. v. Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004) (concluding this premise was not limited to unintended acceleration cases); *DeGrate v. Executive Imprints, Inc.*, 261 S.W.3d 402, 410–11 (Tex. App.—Tyler 2008, no pet.) (providing additionally that such expert testimony be more than conclusory statements as to design defect to be considered competent evidence, sufficient to defeat or support summary judgment for design defect). In some cases, however, expert testimony may not be required, but this is not such an occasion. *See Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 204 (Tex. App.—Texarkana 2008, no pet.); *Sipes v. General Motors Corp.*, 946 S.W.2d 143, 156 (Tex. App.—Texarkana 1997, writ denied) (Expert testimony is not necessarily required to establish a manufacturing defect.). Whether expert testimony is required depends on whether the issue involves matters beyond "the general experience and common understanding of laypersons." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006) (expert testimony needed to establish causation in products liability case where plaintiff alleged that defect in truck's fuel and battery systems caused fire); *Armstrong*, 145 S.W.3d at 137 (expert testimony required to establish causation in unintended acceleration case involving possible product defect). Further, whether a particular issue requires the presentation of expert testimony is an issue of law. *Tamez*, 206 S.W.3d at 583. Thus, whether expert testimony was required depends on whether the theory argued by the Plaintiff involves issues beyond the general experience and common understanding of laypersons. *See Driskill*, 269 S.W.3d at 205.

---

[1] Plaintiff indicated she is no longer pursuing her manufacturing defect claim in a footnote (Doc. 73 at 18 n.3), but the Court will address it in an abundance of caution.

In determining whether a product is defectively designed for purposes of a strict liability claim, the product must be unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. *See General Motors Corp. v. Sanchez*, 997 S.W.2d 584, 588 (Tex. 1999). To prove a design defect in a strict liability case, in addition to proving that the product was defectively designed so as to be unreasonably dangerous, a claimant must establish the defendant could have provided a safer alternative design and the defect was a producing cause of personal injury. Tex. Civ. Prac. & Rem. Code § 82.005(a); *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 42 (Tex. 2007).

In a manufacturing defect case, "the plaintiff must show a manufacturing flaw which renders the product unreasonably dangerous; that the defect existed at the time the product left the seller, and that the defect was the producing cause of the plaintiff's injuries." *Dico Tire, Inc. v. Cisneros*, 953 S.W.2d 776, 783 (Tex. App.—Corpus Christi 1997, writ denied); *see also Uniroyal Goodrich Tire Co. v. Martinez*, 928 S.W.2d 64, 69 (Tex. App.—San Antonio 1995) (citing RESTATEMENT (SECOND) OF TORTS § 402A (1965)), *aff'd*, 977 S.W.2d 328 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999). "[A] plaintiff has a manufacturing defect claim when a finished product deviates, in terms of its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous." *Robins v. Kroger Co.*, 982 S.W.2d 156, 160 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).

A marketing defect (or failure to warn) occurs when a defendant knows or should have known of a potential risk of harm presented by the product but markets it without adequately warning of the danger or providing instructions for safe use. *Romo v. Ford Motor Co.*, 798 F. Supp. 2d 798, 807 (S.D. Tex. 2011) (citing *Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd.*, 299 S.W.3d 374 (Tex. App.—Tyler 2009), *reh'g overruled* (Dec. 16, 2009)).

Here, the Court finds expert testimony is essential to both the existence of the defect and to its causation of injury. *See Casey v. Toyota Motor Engineering & Mfg. North America, Inc.*, 770 F.3d 322, 329–31 (5th Cir. 2014) (requiring expert analysis of a patent or proof of a better design after testing an alternative design to prevail on a products liability claim in Texas); *see also Romo v. Ford Motor Co.*, 798 F. Supp. 2d 798, 809 (S.D. Tex. 2011) (noting that "expert testimony is generally encouraged if not required to establish a products liability claim" in Texas); *Nissan Motor Corp. Ltd.*, 145 S.W.3d at 137 (noting the Texas Supreme Court has "consistently required competent expert testimony and objective proof" of causation in Texas products liability cases). Plaintiff's claims allege defects in the complex and sophisticated design of a modern automobile that are alleged to have caused unforeseeable and severe injuries when the vehicle was involved in a car crash. Specifically, proof of a defect in the vehicle would require significant specialized knowledge beyond anything that could be considered general experience or common understanding, as would proof of a safer alternative design. Similarly, expert testimony concerning causation is equally essential because there are many factors that could have contributed to the cause of Plaintiff's injury from the car crash in this case. These are all issues that clearly require knowledge beyond the general experience and common understanding of laypersons.

Here, Plaintiff has filed her response and supplements to the Defendants' summary judgment motion, however, Plaintiff has not provided expert testimony to support her claims, which this Court finds is required by Texas law based on the nature of Plaintiff's claims and facts of this case.[2] *See Matsushita*, 475 U.S. at 587; *Casey*, 770 F.3d at 330–31; *Nissan Motor Corp. Ltd.*, 145 S.W.3d at 137. Therefore, no genuine issues of material fact remain as to

---

[2] The testimony of Plaintiff's only designated expert witness was excluded by this Court after a hearing on February 25, 2015. (Doc. 77).

Plaintiff's strict liability claims. Viewing the facts in a light most favorable to Plaintiff, she has not established a genuine issue of fact exists concerning her claims of a design, manufacturing, or marketing defect. *See Kelley*, 992 F.2d at 1413. Accordingly, Defendant's Motion for Summary Judgment (Doc. 17) is granted regarding each of Plaintiff's strict liability claims. *See* Fed. R. Civ. P. 56(c); *Kelley*, 992 F.2d at 1413.

## II.     Negligence Claims

Plaintiff next claims Defendants were negligent and grossly negligent. (Doc. 1 at 9–10). Specifically, Plaintiff alleges Defendants breached their duty to provide a safely designed and manufactured product as well as their duty to adequately warn Plaintiff that the 2011 Camry was unsafe to its drivers and passengers.

To recover under a theory of negligence, a plaintiff must show:

>    (1) the existence of a duty on the part of one party to another;
>
>    (2) the breach of that duty; and
>
>    (3) the injury to the person to whom the duty is owed as a proximate result of the breach.

*Dion v. Ford Motor Company*, 804 S.W.2d 302, 309–10 (Tex. App.—Eastland 1991, writ denied) (citing *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex. 1975)).

>    The care taken by the supplier of a product in its preparation, manufacture, or sale is not a consideration in strict liability; this is, however, the ultimate question in a negligence action. Strict liability looks at the product itself and determines if it is defective. Negligence looks at the act of the manufacturer and determines if it exercised ordinary care in design and production.

*Syrie v. Knoll Intern.*, 748 F.2d 304, 307 (5th Cir. 1984) (quoting *Gonzales v. Caterpillar Tractor Co.*, 571 S.W.2d 867, 871 (Tex. 1978)). "Both negligent manufacturing and negligent design require a showing of dangerous product." *Kallassy v. Cirrus Design Corp.*, 2006 WL

11

1489248, at *3 (N.D. Tex. 2006) (citing RESTATEMENT (SECOND) OF TORTS § 395). Further, where a manufacturer fails to properly warn of the dangerous propensities of a product, the failure to warn may render an otherwise non-defective product unreasonably dangerous. *Munoz v. Gulf Oil Co.*, 732 S.W.2d 62, 65 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (citing RESTATEMENT (SECOND) OF TORTS § 402A). The adequacy of a warning is a question of fact for the jury but the existence of a duty to warn is a question of law. *Id.* Finally, all negligence causes of action in products liability cases require a showing of proximate causation—that is, a plaintiff must prove the breach of the duty was a cause-in-fact of the injury and the defendant should have reasonably foreseen the injury. *Brown v. Edwards Transfer Co., Inc.*, 764 S.W.2d 220, 223 (Tex. 1988).

Texas courts have explained where "the allegations and evidence are directed to whether the product is 'unreasonably dangerous' and no other potentially negligent conduct is alleged or the subject of evidence," the negligence theories are subsumed by the strict liability theories asserted. *Garrett v. Hamilton Standard Controls, Inc.*, 850 F.2d 253, 257 (5th Cir. 1988). In *Garrett*, the Fifth Circuit, applying Texas law, explained:

> Although a negligence claim requires a different showing from a strict liability claim, it is not logical for a manufacturer to be held liable for failing to exercise ordinary care when producing a product that is not defective because (1) if a product is not unreasonably dangerous because of the way it was manufactured, it was not negligent to manufacture it that way; and (2) even if the manufacturer was somehow negligent in the design or production of the product, that negligence cannot have caused the plaintiffs injury because the negligence did not render the product 'unreasonably dangerous.'

*Garrett*, 850 F.2d at 257.

Plaintiff's negligence claims against Defendants are based on the allegation that the 2011 Camry was unreasonably dangerous due to a defect. (Doc. 1 at 9–10). Even Plaintiff's claims of

failure to warn are dependent on the 2011 Camry being unreasonably dangerous due to a defect. (*Id.*). Thus, all Plaintiff's claims against Defendants under negligence theories are subsumed by her claims against Defendants under strict liability theories, for which the Court previously granted summary judgment above in favor of Defendants based on no evidence. Even if Plaintiff's claims remain separate, her negligence claims still require a showing of cause-in-fact just like the strict liability claims which she failed prove. Plaintiff's claims for negligent manufacturing and negligent design additionally require a showing of defect, which requires expert testimony that Plaintiff has failed to produce as previously noted. *See Casey*, 770 F.3d at 330–31; *Romo*, 798 F. Supp. 2d at 809; *Nissan Motor Corp. Ltd.*, 145 S.W.3d at 137.

Here, Plaintiff has responded to the motion, but has failed to establish all elements of her negligence claims. Specifically, Plaintiff has failed to provide expert testimony demonstrating the existence of a defect and that the defect was the cause-in-fact of Plaintiff's harm. Viewing the facts in a light most favorable to Plaintiff, she has not established a genuine issue of material fact exists concerning her claims for negligence in the design, manufacturing, or marketing of the 2011 Camry, nor has she produced expert testimony supporting these allegations. *See Matsushita*, 475 U.S. at 587. Plaintiff's gross negligence claims fail for the same reasons as her negligence claims. A defendant "cannot be grossly negligent without being negligent." *Trevino v. Lightning Laydown, Inc.*, 782 S.W.2d 946, 949 (Tex. App.—Austin 1990, writ denied); *see Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 174 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Accordingly, the Defendant's Motion for Summary Judgment is granted regarding Plaintiff's negligence claims. (Doc. 17).

### III.     Breach of Implied Warranties Claims

Plaintiff also claims Defendants breached the implied warranty of merchantability. (Doc. 1 at 10–11). That is, Plaintiff alleges Defendants breached this warranty by designing, manufacturing, distributing, selling and refusing to adequately repair or replace the 2011 Camry after it became apparent they were defective.

To prove a breach of this warranty under Texas law, a plaintiff must demonstrate a defect in the "condition of the goods that renders them unfit for the ordinary purposes for which they are used." *Plas-Tex, Inc. v. U.S. Steel Corp.n*, 772 S.W.2d 442, 443–44 (Tex. 1989); *see also* Tex. Bus. & Com. Code § 2.314(b)(3). "The ordinary purpose of an automobile is to provide transportation." *Chandler v. Gene Messer Ford, Inc.*, 81 S.W.3d 493, 503 (Tex. App.—Eastland 2002, pet. denied) (citing *General Motors Corp. v. Brewer*, 966 S.W.2d 56, 57 (Tex. 1998)). Further,

> in a crashworthiness case involving a claim for personal injuries, ... strict-liability's and breach-of-warranty's concepts of "defect" are functionally identical. The claim in a crashworthiness case is that a defect in the vehicle caused an occupant to sustain injuries in an accident that he or she would not otherwise have suffered. A defect in a vehicle that makes it uncrashworthy and thus causes occupants to be exposed to an unreasonable risk of harm in the event of an accident is *both* "unfit for the ordinary purposes for which [it is] used because of a lack of something necessary for adequacy" *and* unreasonably dangerous. An uncrashworthy vehicle cannot be unfit for ordinary use but not unreasonably dangerous, nor can it be unreasonably dangerous but fit for ordinary use; it must be both or neither.

*Hyundai Motor Corp. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 665 (Tex. 1999) (emphasis original). This case, similar to *Hyundai Motor Corporation*, involves the crashworthiness of the 2011 Camry and therefore Plaintiff's strict liability claims and breach of warranty claims are functionally identical. As found above, Plaintiff has presented no expert evidence to support her strict liability claims, as required by Texas law in this case, and the Court

granted summary judgment as to those claims. Because the breach of warranty claims are functionally identical to the strict products liability claims, the Court also grants the Defendants' Motion for Summary Judgment as to Plaintiff's warranty claims. (Doc. 17).

## IV. Fraud/Misrepresentation/Omission Claims

Finally, Plaintiff alleges Defendants made material misrepresentations that the 2011 Toyota Camry was safe for a front seat passenger, intentionally omitted disclosure that the 2011 Toyota Camry was not safe for a front seat passenger, and failed to advise, and/or omitted to disclose, their 2011 Toyota Camry was particularly unsafe for female passengers in the front seat. (Doc. 1 at 11–12).

A claim of fraud and misrepresentation requires reliance on a misrepresentation of fact and proof of causation of injuries flowing from that reliance. *See Rubalcaba v. Pacific/Atlantic Crop Exchange, Inc.*, 952 S.W.2d 552, 555–56 (Tex. App.—El Paso 1997, no writ). In addition, elements of fraud by nondisclosure or omission are:

> (1) the defendant failed to disclose facts to the plaintiff;
>
> (2) the defendant had a duty to disclose those facts;
>
> (3) the facts were material;
>
> (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts;
>
> (5) the defendant was deliberately silent when it had a duty to speak;
>
> (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting;
>
> (7) the plaintiff relied on the defendant's nondisclosure; and
>
> (8) the plaintiff was injured as a result of acting without that knowledge.

See *Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997); *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 352 (Tex. 1995); *Smith v. Nat'l Resort Communities, Inc.*, 585 S.W.2d 655, 658 (Tex. 1979).

Again, Plaintiff has offered no summary evidence regarding the elements of these claims. Viewing the facts in a light most favorable to Plaintiff, she has not provided any facts in support of these claims. Therefore, the Court also grants the Defendants' motion for summary judgment as to these claims. (Doc. 17).

## Conclusion

Based on the above-stated reasons, viewing the facts in a light most favorable to Plaintiff, the Court finds no genuine issues of fact remain and grants Defendants' motion for summary judgment as to all claims. (Doc. 17). Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 17) is hereby **GRANTED**.

It is so ordered.

Signed this 27th day of April, 2015.

Robert Junell
Senior United States District Judge
Western District of Texas

16